IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANNE O.,[1] ) <br> ) <br> Plaintiff, ) <br> ) No. 21 C 2348 <br> v. ) <br> ) Magistrate Judge Beth W. Jantz <br> KILOLO KIJAKAZI,[2] ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | |

### MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Dianne O.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. §636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 16, Pl.'s Mot.] is granted, and the Commissioner's cross-motion for summary judgment [dkt. 19, Def.'s Mot.] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

**BACKGROUND**

I.    **Procedural History**

On August 18, 2015, Plaintiff filed a claim for DIB, and on October 2, 2015, Plaintiff filed a claim for SSI, both alleging disability since January 2, 2015, due to chronic fatigue syndrome, hypoglycemia, irritable bowel syndrome, subclinical hyperthyroidism, adrenal exhaustion, Epstein Barr virus, pelvic floor dysfunction, and pain in her neck and shoulder on her dominant side. [Dkt. 13-1, R. 364-69, 419.] Plaintiff's claims were denied initially and again upon reconsideration. [R. 144-45, 172-73.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held by telephone on May 6, 2020. [R. 70-123.] Plaintiff personally appeared by telephone and testified at the hearing and was represented by counsel. [R. 72, 89-118.] Vocational expert ("VE") Julie Bose also testified. [R. 118-22.] On June 23, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 16-33.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.

II.    **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 16-33.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 2, 2015. [R. 19.] At step two, the ALJ concluded that Plaintiff's chronic fatigue syndrome was a severe impairment. [R. 19-24.] The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 24.] Before step four, the ALJ

determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: she could only occasionally balance, stoop, crouch, crawl, and climb ramps and stairs, ladders, ropes, and scaffolds, and she could be off task up to 10% of the workday, excluding breaks, intermittently throughout the workday. [R. 24-31.] At step four, the ALJ concluded that Plaintiff could perform her past relevant work as an office administrator and real estate marketer. [R. 31-32.] Accordingly, the ALJ found that Plaintiff is not disabled under the Social Security Act. [R. 32.]

## DISCUSSION

### I.  Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837; *see also Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351).

II.     Analysis

Plaintiff argues that the ALJ committed reversible error by: (1) improperly evaluating Plaintiff's mental RFC, (2) improperly evaluating Plaintiff's subjective symptoms, and (3) improperly weighing the medical opinion evidence. [Dkt. 16, Pl.'s Mem. at 6-13.] After reviewing the record and the briefs submitted by the parties, this Court concludes that the ALJ erred in assessing Plaintiff's mental RFC. Because this failure alone warrants remand, the Court need not reach Plaintiff's additional arguments.

Plaintiff argues that the ALJ erred by failing to account for Plaintiff's mental impairments in crafting the RFC. [Pl.'s Mem. at 6-9.] Plaintiff contends both that the ALJ failed to properly evaluate Plaintiff's mental impairments at step two and then also failed to incorporate into the RFC even the mild limitation she found that Plaintiff had in adapting or managing herself. [*Id.*] The Court agrees with Plaintiff that the ALJ erred by failing to incorporate into the RFC Plaintiff's mild limitation in adapting or managing herself and not explaining *why* that mild limitation produced no functional restrictions that needed to be included in the RFC. This error requires remand.

The ALJ's sole evaluation of Plaintiff's mental limitations came at step two, where the ALJ concluded that Plaintiff's chronic fatigue syndrome was a severe impairment, but that Plaintiff's affective and anxiety disorders were non-severe. [R. 18, 21.] In evaluating each area of mental functioning, the ALJ reviewed Plaintiff's testimony regarding her daily activities and some of the medical evidence in the record. [R. 21-23.] The ALJ concluded that Plaintiff had no limitations in the areas of interacting with others or concentrating, persisting, or maintaining pace and that Plaintiff had a mild limitation in adapting or managing herself. [R. 22.] Further, the ALJ contradictorily stated at the beginning of her analysis, concerning understanding,

5

remembering, or applying information, that Plaintiff had "no limitation" in that area but concluded the paragraph by stating that Plaintiff had "no more than a mild limitation." [R. 21-22.] It is thus not clear to the Court whether the ALJ found no or a mild limitation in understanding, remembering, or applying information. Plaintiff does not specifically identify this error, and the Court need not determine whether it warrants reversal, but the lack of clarity troubles the Court.

Also of note at step 2, the ALJ stated that she had considered and found persuasive the opinions of the state agency psychological consultants who had concluded on initial review and reconsideration that Plaintiff had no severe mental impairments, but the ALJ did not actually discuss their opinions as to Plaintiff's areas of mental functioning. [R. 23.] The state psychologist on initial review concluded that Plaintiff had mild limitations in activities of daily living, social functioning, and concentrating, persisting, or maintaining pace, [R. 128], while the state psychologist on reconsideration concluded that Plaintiff had no limitations in any area, [R. 153]. The ALJ's ultimate determinations—that Plaintiff had a mild limitation in adapting and managing herself and no limitations in the remaining areas—were thus at odds with both of these opinions; the ALJ's findings were less restrictive than the opinion on initial review that Plaintiff was mildly limited in 3 functional areas, and more restrictive than the opinion on reconsideration that Plaintiff had no limitations in these areas. [*See* R. 22, 128, 153.] But the ALJ never discussed or acknowledged the specifics of the opinions of the state psychologists—at step two or otherwise. [*See* R. 23, 29-30.] Again, although the Court need not decide whether this renders the ALJ's analysis deficient, the Court is troubled that the ALJ would find the state psychologists' opinions persuasive but not discuss highly relevant portions of their opinions.

At the end of the ALJ's step two discussion of Plaintiff's mental impairments, the ALJ expressly noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental functional analysis.

[R. 23.] And the ALJ stated that she "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's RFC]." [R. 23.] Notwithstanding the ALJ's statement that her step two discussion was "not a residual functional capacity assessment," the ALJ did not further evaluate Plaintiff's mental limitations throughout the rest of her opinion.

Despite the ALJ's acknowledgment that the RFC required "a more detailed assessment," [R. 23], the ALJ's RFC analysis did not include one. The ALJ's imposition of the only non-physical RFC limitation—for Plaintiff to be off task up to 10% of the workday—was to accommodate Plaintiff's complaints of "fatigue pain," not any mental limitations. [R. 29 ("*To account for the claimant's complaints of fatigue pain* in light of the objective evidence, the undersigned expects the claimant to be off task up to 10% of the workday, excluding breaks, intermittently throughout the workday." (emphasis added)).] Indeed, throughout the ALJ's discussion of Plaintiff's chronic fatigue syndrome, the ALJ repeatedly limited her analysis to the *physical* limitations of Plaintiff's condition. [*See* R. 27-29.] The only mention of mental impairments came when the ALJ broadly rejected Plaintiff's treating physicians' opinion evidence concerning Plaintiff's mental impairments because they were seemingly based on Plaintiff's subjective reports, but this discussion does not explain why the ALJ did not believe

7

that *any* limitations were warranted to account for Plaintiff's mental conditions and fatigue. [R. 30.] Moreover, although the ALJ affirmatively stated at step two that she "considered all of [Plaintiff's] medically determinable impairments" in determining the RFC, the ALJ never gave an explanation as to how those impairments, whether alone or in combination with Plaintiff's physical impairments, impacted the RFC. [R. 23.]

Here, the ALJ failed to properly account in the RFC for the mild limitation that she found that the Plaintiff had in adapting or managing herself. It is axiomatic that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is true even if mental impairments "are non-severe and the limitations that they impose on the claimant's capabilities are minor." *Thomas G. v. Kijakazi*, No. 20-CV-5860, 2022 WL 4234967, at *4 (N.D. Ill. Sept. 14, 2022) (collecting cases). Time and time again, courts in this District have remanded ALJ opinions identifying non-severe mental impairments at step two that disappear without explanation when it comes time to craft the RFC before step four. *See e.g., Thomas G.*, 2022 WL 4234967, at 5 (Cummings, J.); *Kathy A. v. Kijakazi*, No. 20-CV-2387, 2022 WL 2758001, at *5 (N.D. Ill. July 14, 2022) (Cummings, J.); *Anthony W. v. Kijakazi*, No. 20 C 6209, 2022 WL 1062334, at *3 (N.D. Ill. Apr. 8, 2022) (Harjani, J.); *Judy D. v. Saul*, No. 17 C 8994, 2019 WL 3805592, at *4 (N.D. Ill. Aug. 13, 2019) (Schenkier, J.); *Iora P. v. Berryhill*, No. 18 C 3640, 2019 WL 1112272, at *4 (N.D. Ill. Mar. 11, 2019) (Rowland, J.); *Hearan v. Berryhill*, No. 17 C 0542, 2018 WL 3352657, at *3 (N.D. Ill. July 9, 2018) (Gilbert, J.). The ALJ here did what this line of cases indicates is impermissible: the ALJ determined at step two that Plaintiff had non-severe mental impairments that warranted a mild limitation in

adapting or managing herself, but the ALJ failed to discuss or even mention Plaintiff's mild mental limitation in crafting the RFC.

The Commissioner argues that the ALJ reasonably determined that Plaintiff had no limitations or mild limitations in the four areas of mental functioning. [Dkt. 19, Def.'s Mem. at 4.] Even assuming that the ALJ adequately analyzed the extent of Plaintiff's mental limitations at step two, however, the ALJ's step two discussion cannot justify the RFC because the ALJ expressly stated that the discussion was not an RFC assessment and that the RFC "require[d] a more detailed assessment." [R. 23.] It is true that ALJ opinions must be read holistically, and the failure to repeat an analysis from step two or three when crafting the RFC before step four is typically not a proper basis for remand. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) ("[The sequential process is not so rigidly compartmentalized, and nothing in the *Chenery* doctrine prohibits a reviewing court from reading an ALJ's decision holistically."). But in this instance, where the ALJ expressly noted that her step two analysis did not constitute an RFC assessment, and that an RFC assessment required a more detailed analysis, "the Court will not overreach and ignore the ALJ's own words in an effort to read the opinion as a whole." *Anthony W.*, 2022 WL 1062334, at *3; *see also David K. v. Kijakazi*, No. 20-CV-1743, 2022 WL 2757695, at *5 (N.D. Ill. July 14, 2022) (same). The ALJ was obligated to explain either how the RFC "incorporate[d] restrictions caused by Claimant's mild mental limitations," or, alternatively, why "the ALJ believed that the mild mental limitations did not merit a non-exertional limitation in the RFC." *Viviana R. v. Kijakazi*, No. 19-CV-07419, 2022 WL 3354840, at *5 (N.D. Ill. Aug. 12, 2022). The ALJ's opinion contains no such explanation.

9

"Even if a mild limitation finding at step two does not necessarily equate to any RFC limitation, the ALJ must still affirmatively *evaluate* the effect such mild limitations have on the claimant's RFC." *Kathy A.*, 2022 WL 2758001, at *4 (cleaned up). It is the ALJ's failure to conduct such an evaluation—and not the ALJ's failure to find any limitations—that requires remand. This type of error is particularly problematic when, as here, an ALJ finds that a plaintiff can perform past skilled work, [R. 31-32]. *See, e.g., Anthony W.*, 2022 WL 1062334, at *4 ("The ALJ's error in the present case is particularly problematic because the VE found that Anthony could perform his previous work as an automobile salesperson and a household appliance salesperson; jobs that The Dictionary of Occupational Titles ("DOT") lists as skilled and semi-skilled employment."); *Iora P.*, 2019 WL 1112272, at *4 ("This error is particularly problematic here, as the VE found that the ALJ's RFC would permit Plaintiff to perform her past skilled position as a senior financial advisor."). The Court cannot say based on this record that the ALJ's error was harmless.

"On remand, the ALJ must either incorporate into the RFC non-exertional limitations that account for [Plaintiff's] mild limitation[] in" adapting and managing herself "*or* explain why such limitations are unnecessary." *Kathy A.*, 2022 WL 2758001, at *5. Because the ALJ's failure to adequately evaluate Plaintiff's mental limitations vis a vis the RFC requires remand, the Court need not address Plaintiff's remaining arguments. The Administration should not, however, construe the Court's silence on the remaining issues as an indication that the ALJ's initial adjudication was appropriate or not with respect to those issues.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [16] is granted, and the Commissioner's cross-motion for summary judgment [19] is denied. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 6/7/23

*[signature]*

BETH W. JANTZ
United States Magistrate Judge